### GEORGE E. CRAIG *vs.* WILLARD LEWIS.
### MARY F. BARRETT *vs.* SAME.

The owner of land which was flowed by a dam gave to the owner of the dam a writing, not under seal, in which he acknowledged the receipt of "full payment for all dues or demands for damage" to the land by the flowing, and "discharged" the owner of the dam "from all liability for any flowage;" and he afterwards conveyed the land by a deed in which he covenanted that it was free from incumbrances except the right of flowage, but did not admit any right of flowage. *Held,* that his grantee was not estopped to claim damages for flowing by the dam subsequent to the conveyance.

COMPLAINTS dated April 8, 1871, under the Gen. Sts. *c.* 149, for overflowing a parcel of land in Walpole. The complaint of Mary F. Barrett was for flowing from April 8, 1868, to September 6, 1870, and the complaint of George E. Craig was for flowing from September 6, 1870, to the date of the complaints. Both cases were tried together in the Superior Court, before *Brigham,* C. J., without a jury, when the following facts appeared:

The dam of the respondent's mill had, for the last fifteen years, overflowed the land described in the complaints. On September

4, 1861, Samuel G. Clap, who then owned said land, signed and delivered to George Guild, who then owned, as trustee under the will of Harlow Lawrence, the dam now belonging to the respondent, the following paper: " Received of the estate of Harlow Lawrence, deceased, one dollar and other good considerations, in full payment for all dues or demands for damage to my land by the flowage of water by the dam at the Lawrence factory, or otherwise. And I hereby discharge George Guild, as trustee of the Harlow Lawrence estate, from all liability for any flowage of my land."

In 1863 the dam was conveyed to the respondent. In May 1866 the land described in the complaint was conveyed to Nathaniel T. French by a deed, containing a covenant that the land was free from all incumbrances " except such right as the proprietors of the Lawrence factory privilege may have to flow said premises by their pond; but no right of flowage is admitted." In September 1866, French conveyed the land to the complainant Mary F. Barrett, who on September 6, 1870, conveyed it to Edward C. Craig, who soon after conveyed it to the complainant, George E. Craig; and all these later conveyances contained the same exception as that in the deed from Clap to French. Since the release by Clap no damages for overflowing the land in question have been paid, nor have any ever been demanded until these complaints.

The respondent contended that the release of Clap was a bar to all claim by Clap or any one holding under him, for damages for overflowing the land, but the judge ruled that it was a release only for damages due at its date ; and that the complainants were entitled to have their damages assessed. The respondent alleged exceptions.

*C. T. Russell*, for the respondent.

*W. Colburn*, for the complainants.

COLT, J. It is claimed that the written instrument relied on is, by its true construction, not only a receipt for past flowing damages, but a release to the mill owner in terms of all future liability. It is not necessary critically to interpret the language used, because, in the opinion of the court, whatever was the in

tention of the original parties, and whatever effect as between them is to be given to the paper, the right of the present owners of the land flowed to recover compensation for the injury by proceedings under the statute is not defeated by it.

It is indeed true that no form of conveyance is required to create the right to flow for mill purposes; that right is given by statute, and there is left to the landowner only a claim for damages to be ascertained and enforced in proceedings under the mill act; a claim for money only, which may be satisfied or released by parol, and which, so far as concerns present owners, is a mere personal right. But this right to damages passes to each successive owner of the land as an incident of the real estate until it has been legally extinguished. It may be barred by grant of the owner executed with due formality, giving the right to flow permanently without compensation. It may be lost by prescription. And the assessment and payment of gross damages in proceedings under the mill act will without doubt extinguish the future right, and to that extent charge the land with an incumbrance. The purpose of the statute is twofold; it affords a remedy for damages already sustained, and provides that under the same complaint the jury shall ascertain what sum would be reasonable for future annual damages, and also what in gross would be a compensation for the right of using the same forever. The landowner thereupon has the right, within a fixed time, to enter of record an election to take the gross sum so awarded instead of annual compensation. And having made an election, the mill owner must then pay, or lose his rights under the statute. If compensation in full is not desired by the landowner, then the occupant of the mill must pay the annual damages established by the jury, and is subject to an action of contract therefor. Gen. Sts. c. 149, §§ 18–25. *Charles* v. *Monson & Brimfield Manuf. Co.* 17 Pick. 70. *Walker* v. *Oxford Woollen Manuf. Co.* 10 Met. 203, 206.

It is insisted that as the assessment by verdict and payment of gross damages creates an incumbrance, and bars the subsequent purchaser, so payment by agreement in the country without assessment must have the same effect. This does not follow. In

the former mode, payment is preceded by verdict and judgment and by an election of the landowner made part of the record · the land is charged with an incumbrance in the hands of each successive owner by force of the statute and the judgment under it. In the latter, the agreements of the parties must be subject to the rules which govern the title and transfer of all interests in real estate, and can create an incumbrance on the land only when they contain words of grant and are executed in due form. It is not contended that the words of this receipt and release are sufficient to convey any interest in the real estate or to create an incumbrance, except as applied to the statute right to flow. But this right can only be availed of upon the conditions and in the mode pointed out by the statute.

The·complainants' right to recover damages is therefore not affected by the alleged settlement of the previous owner. Nor does it appear that they have personally waived their right to claim damages by declarations or conduct inconsistent with such right. The complainants derive title under deeds which contain the words " except such right as the proprietors of the Lawrence factory privilege may have to flow said premises with their pond ; but no right of flowage is admitted." There is no recognition here of the right to flow without payment of future damages, subject to which the land is conveyed ; on the contrary no right is admitted, and the clause seems to have been inserted for the purpose of protecting the grantor from any claim upon his warranty on account of the exercise of the mill owner's statute right to flow, without regard to the question whether damages had or had not been paid. Taking such a deed is no waiver of the claim to damages, nor is it notice to the grantee that there had been a payment of all future damages by the mill owner to the grantor. *Fitch* v. *Seymour*, 9 Met. 462. *Seymour* v. *Carter*, 2 Met. 520. *Snow* v. *Moses*, 53 Maine, 546. *Seidensparger* v. *Spear*, 17 Maine, 123. Angell on Watercourses, (6th ed.) §§ 500–504.          *Exceptions overruled.*