[No. 7485.  Decided December 8, 1908.]

EDWARD B. JUDSON et al., Respondents, v. TIDE WATER LUMBER COMPANY, Appellant.[1]

APPEAL—REVIEW—FINDINGS. In an action at law tried by the court without a jury, findings upon conflicting evidence will not be disturbed on appeal where the trial court heard the witnesses and viewed the premises and there appears no preponderance of the evidence against the findings.

NAVIGABLE WATERS—RIPARIAN RIGHTS—OBSTRUCTIONS. Riparian owners on a navigable tidal river have the right to have the waters flow by their lands in a natural way, and to prevent obstructions or diversion thereof whereby their banks are being washed away; and in such case equity has power to order the removal of the obstructions, in addition to awarding damages.

SAME—DEFENSES—RIPARIAN RIGHTS—OWNERS OF TIDE LANDS. The ownership of tide lands by a riparian owner along the bank of a navigable river does not give any right to place obstructions in the river diverting the flow of the waters to the damage of other riparian owners.

SAME—NAVIGABILITY. Where a channel in a navigable river between the shore and a sand bar is navigable by row boat at half tide, and at full tide carries six feet of water, the same is navigable in fact.

[1]Reported in 98 Pac. 377.

SAME—DAMAGES FOR OBSTRUCTING RIVER—EXCESSIVENESS. A judgment for $11,250 damages for the obstruction of a navigable river, whereby the water was diverted and two and a quarter acres of the plaintiffs' land washed away, is not excessive, where there was evidence that the land was worth $5,000 per acre.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered January 27, 1908, upon findings in favor of the plaintiffs for damages, after a trial before the court without a jury, in an action for the obstruction and diversion of a river. Affirmed.

*G. C. Israel* and *W. P. Reynolds*, for appellant, contended, among other things, that the area in dispute was part of the tide lands abutting on appellant's property and not part of the channel or bed of the Puyallup river. Const. art. 17, § 1; Pierce's Code, §§ 8204, 8244, 8247. Had these accretions and deposits occurred in a non-tidal river, under the common law right of riparian owners to take to the "thread of the stream," the land formed by accretions would have become the property of the defendant to the loss of the plaintiff of the lands the river had taken to compensate itself. 3 Farnum, Waters, p. 2495; *Quinlin v. Bratley* (Iowa), 80 N. W. 405; *Bouvier v. Stricklett*, 40 Neb. 792, 59 N. W. 550; *Buse v. Russell*, 86 Mo. 209; *Cox v. Arnold*, 129 Mo. 337, 31 S. W. 592, 50 Am. St. 450.

*Ellis, Fletcher & Evans* and *Herbert S. Griggs*, for respondents.

HADLEY, C. J.—This is an action for damages occasioned by the alleged wrongful obstruction of a portion of the channel of the Puyallup river. The removal of the obstructions is also sought to be effected by the action, in order that the original flow of the river may be re-established.

The defendant Tide Water Lumber Company is the owner of a lumber mill, on the westerly or left side of the Puyallup river, not far above the mouth of the stream where it flows

into Puget Sound. On the easterly or right side of the river, and a short distance down the stream below that part of the shore immediately opposite the defendant's mill, lies a tract of land which belongs to the plaintiffs. The complaint alleges, that this land lies on the east bank of the stream and has a frontage, as originally surveyed and meandered by the United States, of about four hundred and sixty feet on the river, and that the premises contain six and 22-100 acres, according to the original surveys and meanders; that the Tide Water Lumber Company, in connection with the operation of its lumber manufacturing plant upon the opposite side of the river, some time in the year 1902, commenced to obstruct the channel of the river in front of the mill premises, by extending permanent obstructions beyond the left bank of the river into the channel thereof; that it has continued to enlarge the obstructions gradually from time to time, and is now engaged in so doing, the same consisting of a double row of piling extending out into the river channel beyond the west or left bank for a distance of about two hundred and fifty feet, and thence northwesterly along the line of the channel and parallel to the west bank a distance of about four hundred feet, having a connection back to the west bank by similar construction a distance of about two hundred and fifty feet; that the piling are driven deeply and solidly into the 'river bottom, and are braced and faced with rough planking and supports so as to form a permanent bulkhead; that by the obstructions the defendant has inclosed about two and one-half acres which, prior to the obstructions, formed a part of the original channel of the river; that the defendant has dredged out a portion of the bottom of the channel so inclosed, and has deposited the matter so dredged out on the outside of the bulkhead so as to permanently obstruct and appropriate to its exclusive use the original channel, for a distance of about two hundred and fifty feet in width and four hundred feet in length along the course of the channel; that but for the obstructions, so placed by the defendant, the

river would naturally have flowed along in the lines of the original channel, and would not have encroached upon the plaintiffs' property beyond the original government meander thereof; that the obstructions diverted the course of the river from the natural channel and forced the current and flow of the waters upon plaintiffs' land, so that a large part thereof has been washed out.

The answer denies many of the averments of the complaint, and affirmatively alleges that the washing away of the plaintiffs' land has been due to the action of high water in the river in times of flood, and not to any diversion of the channel by the defendant. The cause was tried by the court without a jury, and resulted in a judgment for the plaintiffs in the sum of $11,250, as damages; also, in a decree declaring that the original and natural east bank of the river in front of the plaintiffs' property corresponded in general with the meander line of the government survey, and that the original and natural west bank of the river in front of the defendant's property corresponded in general with the delineation thereof as shown on the plat of Indian Addition to the city of Tacoma, which plat is of record in the auditor's office of Pierce county, Washington. The decree also requires the Tide Water Lumber Company to forthwith remove from the river all piling, bulkheading, dirt, logs, debris, and obstructions of every kind and description, placed by it in the river extending beyond the natural bank thereof, as above defined; that the work of removal should be commenced before the 17th day of February, 1908, and thereafter diligently prosecuted and finished by the 17th day of May, 1908. It also provided that, in the event the work of removal is not commenced within the time specified and thereafter diligently prosecuted, then the plaintiffs may remove the obstructions at the expense of said company, and further judgment for the expense of such removal may hereafter be entered upon motion of the plaintiffs, with proper proofs of same, the cause being continued until the obstructions are removed or until the further

order of the court.   The defendant Tide Water Lumber Com-
pany has appealed.

The findings of the court are in substantial accord with
the averments of the complaint.   It was found that, from time
immemorial until appellant commenced to build in the river,
there was a sand bar or island in the river in front of the
lands of appellant, extending in length about two hun-
dred feet and in width from fifty to seventy-five feet; that
the river channel between the sand bar and the natural bank
or line of appellant's property is from fifty to one hundred
feet in width; that this channel at extreme low tide con-
tained but little water, but at half tide a rowboat could be
rowed through it, and at high tide the river ran entirely over
the sand bar and extended from bank to bank some three
hundred and fifty feet in width.   It was found that appellant
had driven the piling and bulkheading and had placed the ob-
structions as alleged, had excavated a log pond below, and
had thrown the dirt and debris upon the sand bar, thereby
raising it along its entire length, so that the river, even in flood
period, does not submerge it; that these acts of appellant cut
off about one-third of the former flow of the river, and that
the river then commenced to compensate itself by washing the
opposite or right bank; that the bank constituting the river
front of respondents' premises had washed away to a small
extent prior to the time the respondents acquired title, and
the bank and lands since then have washed away at least to
the extent of two and one-fourth acres additional, which
amount has been severed from respondents' land and swept
down the river; that at the time of the trial the bank had been
washed back one hundred feet or more along respondents'
entire frontage.   The value of the land washed away was
found to be $5,000 per acre, and judgment was given accord-
ingly.

The findings of the court are vigorously attacked by appel-
lant.   There was much testimony introduced at the trial, and
there was also conflict therein, but there was undoubtedly

substantial testimony in support of the findings of the court. We are unable to discover in the conflict of testimony any preponderance against the findings. The trial court had the opportunity of observing all the witnesses, and he moreover actually went upon the ground and saw the situation. With these opportunities, that court could weigh the testimony far better than we can, from the mere record of the oral testimony and from the observation of the maps and pictures sent up with the record. We shall, therefore, not disturb the findings.

The conclusions of law naturally follow. This is a navigable, tidal river. One-third of its waters and of the force of its current swept between the sand island and the front of appellant's property. At low tide there was not much water in this part of the channel, but at half tide it could be navigated with a rowboat, and at full tide the waters rose above the entire island so that a boat could then pass over it. At ordinary high tide the water in the channel reached a depth of as much as six feet. Respondents' as riparian proprietors on this river, have the right to prevent the obstruction of the flow or the diversion of its waters, and to have the same continue to flow in a natural way by their lands. This is a right inseparably annexed to the soil itself. *Crook v. Hewitt,* 4 Wash. 749, 31 Pac. 28; *Rigney v. Tacoma Light & Water Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425; *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107.

Appellant argues that the land in front of its premises is tide land, the title to which it has taken steps to acquire from the state; but it was held in *Dawson v. McMillan,* 34 Wash. 269, 75 Pac. 809, that any sale of tide lands by the state must be subject to the paramount right of the public in the navigable waters thereof, and confers no right to obstruct navigation therein. The evidence shows that the channel in front of appellant's property is a navigable one in fact, although it may not be navigable at low tide, which

establishes its navigability in law within the decision of *Dawson v. McMillan, supra.* The.doctrine of the latter case was also approved in *Monroe Mill Co. v. Menzel,* 35 Wash. 487, 77 Pac. 813, 102 Am. St. 905, 70 L. R. A. 272, which involved a fresh water stream, not at all times navigable in fact, but which was periodically navigable. Appellant is therefore not only unlawfully obstructing a navigable channel, but as a result of so doing it has caused the waters to be diverted and thrown upon respondents' land, to their serious damage. It seems elementary, therefore, that appellant should respond in damages; and in view of all the testimony upon that subject, we think this court should not say that the amount of damages awarded is excessive. It also follows that appellant, as a wrongdoer obstructing a navigable .channel and thereby continuing to injure respondents' land, should remove the obstructions, restore the river to its former channel, and thereby cause the damage to cease. To that end it was proper for the court, acting as a court of equity, to order the appellant to remove the obstructions.

The judgment in all essential particulars is affirmed, but it will be necessary to modify it in respect to the time for the removal of the obstructions. The judgment allowed twenty-one days from its date for the commencement of the work of removal, and required that it be thereafter diligently prosecuted and finished within three months from the commencement of the work. By reason of the appeal, that time has long since passed. The cause is remanded with instructions to enter a supplemental order as a modification of the original judgment, to the effect only that the same length of time shall be allowed for the commencement and completion of the work respectively, after the date of such order, as was formerly allowed with reference to the date of the original judgment. The modification shall not affect respondents' recovery of their costs on appeal.

RUDKIN, DUNBAR, MOUNT, and CROW, JJ., concur.

FULLERTON, J., took no part.